IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN T. PATRICK, § | |
| TDCJ-CID NO. 648579, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-11-2095 |
| § | |
| PHILLIP O. BICKHAM, et al., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

John T. Patrick, an inmate of the Texas Department of Criminal Justice (TDCJ) filed a civil rights action under 42 U.S.C. § 1983 claiming that TDCJ officials violated his constitutional rights. Defendants Senior Warden Phillip O. Bickham, Assistant Warden Sharon Johnson, and Sergeant Lorena Arellano, have filed a Motion for Summary Judgment (Docket Entry No. 36) supported by records and affidavits. For the reasons explained below, defendants' motion will be granted.

### I. Patrick's Claims and Procedural History

The remaining issues in this action concern allegations that the defendants were deliberately indifferent to Patrick's medical condition and that Warden Johnson retaliated against Patrick. Patrick's original Complaint (Docket Entry No. 1) contained numerous allegations and claims including: destruction of his

personal property, denial of food and hygiene, and exposure to extreme temperatures. Pursuant to court orders, Patrick filed an amended Complaint (Docket Entry No. 13), followed by a More Definite Statement (Docket Entry No. 19), both of which were examined by the court. The court then ordered a Spears[1] hearing to allow Patrick another opportunity to state his claims.

After the Spears hearing and further review of the pleadings, the court issued a Memorandum Opinion and Order (Docket Entry No. 24) dismissing all claims as frivolous except Patrick's claims regarding retaliation and deliberate indifference to his medical needs. The court's conclusion that Patrick had stated a claim that Bickham, Johnson, and Arellano were deliberately indifferent to his serious health needs was based on Patrick's allegation that he was denied his "Keep on Person" (KOP) medication for high cholesterol and blood pressure on 36 occasions between August 12, 2010, and September 18, 2010. Patrick was confined to Pre-Hearing Detention (PHD) during this period. He also alleges that he was deprived of his glasses during that period and claims that he is visually impaired and cannot read without them. The court's determination that Patrick had stated a claim that Warden Johnson had retaliated against him was based on his allegations that Johnson had authorized the taking of his medications after warning Patrick that she could make things difficult for him when he complained to her

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

previously about a prior confiscation of his property. Patrick seeks monetary damages and return of his lost property.

## II. **Defendants' Arguments and Supporting Evidence**

The defendants assert the defense of qualified immunity and argue that Patrick has failed to prove that they were deliberately indifferent to his serious medical needs. They contend that the records show that Patrick was not harmed by the alleged taking of his medication and glasses. They further contend they were not involved in or even aware of the missing items until the issue had been rendered moot. They point out that Patrick's medical and psychological conditions were monitored daily while he was in PHD and that no significant changes were noted. They also present evidence showing that attempts were made to give Patrick his medications, which Patrick rebuffed.

The defendants argue that Patrick's retaliation claim against Warden Johnson is conclusory, and there is no direct evidence to support the claim. In support of their arguments, the defendants have submitted the following records:

    Exhibit A:   Relevant Portions of Patrick's Classification Records with business records affidavit (Docket Entry No. 36-1)

    Exhibit B:   Relevant Portions of Patrick's Grievance Records with business records affidavit (Docket Entry No. 36-2)

    Exhibit C:   Relevant Portions of Patrick's Medical Records with business records affidavit (Docket Entry Nos. 36-3, 36-4, 36-5)

    Exhibit D:    Relevant Portions of Patrick's UTMB – Correctional Care – Department of Pharmacy Medication Compliance Records with business records affidavit (Docket Entry No. 36-6)

    Exhibit E:    Affidavit of Sharon Johnson (Docket Entry No. 36-7)

    Exhibit F:    Affidavit of Lorena Arellano (Docket Entry No. 36-8)

    Exhibit G:    Transcript of November 15, 2011, Spears Hearing (Docket Entry No. 36-9)

The records submitted by defendants establish the following facts:

On August 12, 2010, Sergeant Arellano was releasing prisoners from their cells and sending them to lunch at the prison dining hall. (Docket Entry No. 36-8, at 2) Patrick exited his cell like the others, but he did not proceed down the cellblock walkway as directed. Id. Arellano instructed Patrick to either go to lunch or to the cellblock dayroom. (Docket Entry No. 36-1, at 3) Patrick did not comply and instead remained in the cell row while blocking his fellow inmates' progress and disrupting the operations. Id. When Sergeant Arellano ordered Patrick to clear the walkway, Patrick did not move and stated that he wanted to be given a different housing assignment. (Docket Entry No. 36-8, at 3) Arellano responded that she could not do anything about his housing assignment and again ordered him to clear the hallway. Id. Instead of complying, Patrick answered loudly, "Well lock me up. I'm not going anywhere but lockup." Id. Arellano gave Patrick several more chances to exit the cell block. Id. When it became

clear that Patrick would not comply, Sergeant Arellano warned him that he was creating a disturbance and that he would be charged with a disciplinary charge. (Docket Entry No. 36-8, at 3) Arellano then placed Patrick in hand restraints and walked him to the infirmary for Pre-Segregation Note or PHD medical review. Id. The examiner, Virginia E. Robinson, RN, observed no unusual conditions, physically or mentally. (Docket Entry No. 36-5, at 37-39) She noted that Patrick's blood pressure was 182/93 and that he was taking the following medications: Amlodipine, Enalapril Maleate, Nortriptyline Hcl, Pravastatin, and Hydrochlorodthiazide. Id. at 37.

After taking Patrick to PHD and placing him in a cell, Sergeant Arellano contacted a utility officer and instructed him to remove Patrick's personal items from his cell. (Docket Entry No. 36-8, at 3) Officer Mayheu collected the property. (Docket Entry No. 36-1, at 9) Pursuant to TDCJ policy, the property was received and inventoried by officers not involved in the incident and handed to the PHD officers. Id.; Docket Entry No. 36-8, at 3. Consequently, Sergeant Arellano neither handled nor had knowledge of Patrick's belongings or what became of them.

Sargent Arellano completed an Offense Report, which was approved by her supervisor. (Docket Entry No. 36-1, at 4) Patrick was later given a disciplinary hearing on August 17, 2010, where he was found guilty of refusing to obey an order and was given the following punishments: loss of 45 days of commissary privileges,

45 days of cell restriction, and retention at Line Class 3. (Docket Entry No. 36-1, at 3) Medical staff monitored Patrick's physical and mental status each day while he was confined in PHD from August 12 until August 17. (Docket Entry No. 36-5, at 33) No significant problems are cited on the TDCJ Solitary/Prehearing Managed Care - Flow Sheet. However, there are notations of "Throwing stool, referred to psych" on August 13, and "Flooding, throwing stool, psych on the block" on August 15. Id.

Patrick filled out a Step 1 Offender Grievance complaining about his conditions in PHD (Grievance 2010217313) on August 16, 2010. (Docket Entry No. 36-2, at 12-13) Patrick asserted that he was suffering from high blood pressure due to being denied his medication. Id. He also accused Sergeant Arellano of hiding his medication, along with the rest of his personal property. The grievance was denied based on insufficient evidence. Id. at 13. Patrick filed an appeal, which was denied because further investigation revealed that efforts to return Patrick's property were rebuffed by Patrick who threw feces at his cell door during the attempts. Id. at 15. During the investigation Sergeant Arellano responded that all of Patrick's property was returned to him and that no items were confiscated. (Docket Entry No. 36-2, at 17-18) She stated in her affidavit that September 29, 2010, was the first time that she became aware that Patrick was complaining about missing property. (Docket Entry No. 36-8, at 3) Warden Johnson stated in her affidavit that she met with Patrick during

September of 2010. (Docket Entry No. 36-7, at 2) Although Patrick complained of not receiving items he allegedly purchased at the commissary, such as a fan and writing materials, he did not mention anything about his glasses or medication. Warden Johnson also stated that she was not aware that Patrick lacked his blood pressure medication or glasses. Id. She also denies having any retaliatory intent.

In the meantime, Patrick submitted a Sick Call Request (SCR) on August 17, 2010, claiming that his eyes were hurting because Sergeant Arellano had allegedly destroyed his glasses. (Docket Entry No. 36-3, at 3) In response, Patrick was sent to the infirmary for a visual acuity test on August 19, 2010. (Docket Entry No. 36-5, at 12) While confirming that Patrick's right eye vision was 20/200, the results also indicated "NO ACUTE DISTRESS." Id. In addition, Patrick's blood pressure was measured and recorded at 149/84, which was lower than his blood pressure was when he was first placed in PHD. Id.; Docket Entry No. 36-5, at 37. Patrick was advised that the results of the vision test would be forwarded to the provider for review. (Docket Entry No. 36-5, at 12)

Another report of a disciplinary offense was filed against Patrick on August 18, 2010. (Docket Entry No. 36-1, at 17) This time he was charged with creating a disturbance. Id. The incident arose when the charging officer, Lt. Sepulveda, denied Patrick's request to be put in the commissary line. Id. at 25. Instead,

Sepulveda told him to go to his cell. Patrick refused and told the officer to lock him up. Id. The officer then handcuffed Patrick to take him to PHD, but Patrick resisted and created a disturbance by pulling away from Sepulveda. Id. at 17. After signing a property inventory sheet (Docket Entry No. 36-2, at 10), Patrick was once again placed in PHD where he would remain until September 30. He was later found guilty of an infraction and was disciplined with a forfeiture of 90 days of good time, along with restrictions and 15 days of solitary confinement. (Docket Entry No. 36-1 at 16) Consistent with Patrick's previous detention, TDCJ medical staff monitored Patrick on a daily basis to see if he developed any physical or mental difficulties from August 18 until September 30, 2010. (Docket Entry No. 36-5, at 24-25) No problems were noted. Id. On August 19, 2010, Patrick was issued a 30-day supply of the following KOP medications for blood pressure control: Enalapril Maleate (Docket Entry No. 36-6, at 3), Amlodipine (Docket Entry No. 36-6, at 6), and Pravastatin (Docket Entry No. 36-6, at 9).

Patrick filed two requests for a dental appointment, complaining of a toothache on September 12 and 13, 2010. (Docket Entry No. 36-3, at 5-6) In response, Patrick was seen by a dentist the next day. (Docket Entry No. 36-5, at 20) During his visit Patrick's blood pressure was recorded at 110/63. Id.

On September 14, 2010, Patrick submitted a SCR seeking admission to PAMIO (Program for Aggressive Mentally Ill Offenders) claiming that he was frustrated and wanted to kill some of the

Ferguson Unit officials. (Docket Entry No. 36-3, at 7) "Triage" was the indicated response. Id.

Patrick had a dental appointment for periodic periodontic treatment on September 17, 2010. (Docket Entry No. 36-5, at 18) His blood pressure was taken during the visit and was recorded as 122/76. Id. On September 18, 2010, Patrick was issued another 30-day supply of KOP blood pressure medications. He was given Amlodipine (Docket Entry No. 36-6, at 7) and Pravastatin (Docket Entry No. 36-6, at 10).

On September 24, 2010, Patrick filed an SCR, which was his first written notice that his KOP medications had been taken away from him, 43 days after he was first placed in PHD. (Docket Entry No. 36-3, at 4) Patrick also complained that he was experiencing headaches and dizziness. A nurse responded that Patrick's KOP medications had been ordered and that he would be given his dosages on a daily basis until they arrived. Id. A subsequent blood pressure reading on December 23, 2010, of 150/86 for Patrick was entered on December 27, 2010. (Docket Entry No. 36-5, at 22) Other than Patrick's September 24 SCR there are no reports indicating any difficulties relating to blood pressure.

### III. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must determine whether the pleadings and records indicate whether there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; if the non-movant fails to make any showing, summary judgment will be entered in favor of the movant. Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003).

The court construes the evidence such that the non-moving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. Williams v. Time

Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996). Factual controversies will be decided in the non-movant's favor only when both sides have presented evidence showing that there is an actual controversy. Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir. 1998), citing Little, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. Id.

### IV. Analysis

In order for Patrick to prevail in his section 1983 action against the defendants there must be evidence that: (1) the defendants violated his rights secured by the Constitution or laws of the United States and (2) demonstrates that the defendants were acting under color of state law when they committed the deprivations. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004). See also James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008), citing Moore v. Willis Independent School Dist., 233 F.3d 871, 874 (5th Cir. 2000). Violations of duties arising out of tort law will not suffice. Victoria W., 369 at 482. Patrick must also show that the defendants, to the extent they are sued in their personal capacities, were personally involved in the alleged deprivations or were causally connected to the events. Anderson v. Pasadena Independent School Dist., 184 F.3d 439, 443 (5th Cir. 1999), citing Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). A defendant who had no direct contact cannot be held

liable for the acts of his or her subordinates. Id. To the extent that the defendants are sued in their official capacities, it must be shown that the alleged violation was brought about by an 'official policy or custom' of the government agency that employs the defendants. Leffall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994). Isolated incidents of deprivations alone are not sufficient to establish liability. City of Oklahoma City v. Tuttle, 105 S.Ct. 2427, 2436 (1985).

## A.   Denial of Medication - Deliberate Indifference

Patrick alleges that the defendants denied him medication and glasses while he was in PHD. The Eighth Amendment to the Constitution prohibits treatment by custodial officials that inflicts wanton pain upon incarcerated felons or deprives them of the minimal civilized measure of life's necessities. Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999); Talib v. Gilley, 138 F.3d 211 (5th Cir. 1998). It protects prison inmates from being subjected to acts or omissions that endanger their basic health and medical needs. Estelle v. Gamble, 97 S.Ct. 285 (1976). In order for Patrick to establish that he was denied adequate medical care, he must show that the defendants were engaged in "acts or omissions that were sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 292 (1976). A prison official shows deliberate indifference for purposes of an Eighth Amendment claim of deliberate indifference to

-12-

a prisoner's serious medical needs if "'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Brewer v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), quoting Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994). A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Evidence of negligence does not support a claim of deliberate indifference. Estelle, 97 S.Ct. at 292 (1976).

Patrick asserts that Wardens Bickham and Johnson along with Sergeant Arellano deprived him of his glasses and medications when he was placed in PHD in August. Sergeant Arellano is the only defendant who had any contact with Patrick when he was first placed in PHD on August 12, 2010. The other two defendants were not involved in the actions and proceedings relating to PHD. Sergeant Arellano was the officer who confronted Patrick when he refused to clear the walkway as ordered. Another officer was given the task of gathering Patrick's items. The wardens' only connection to the incident is their supervisory positions at the unit where Patrick was transferred to PHD. Government officials cannot be held vicariously liable for the actions of their subordinates. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009); Rios v. City of Del Rio, 444

F.3d 417, 425 (5th Cir. 2006). Because there is no showing that Wardens Bickham and Johnson had any role in Patrick's detention and the alleged loss of his property, the court will dismiss the wardens with regard to Patrick's deliberate indifference claim. Id.; see also Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Sergeant Arellano was involved in the first incident that resulted in Patrick's placement in PHD. However, another officer, Mayheu, was responsible for removing Patrick's property from his cell. Mayheu then gave the items to officers who were also not involved in the case. Therefore, Sergeant Arellano cannot be held liable for the alleged denial of the items. See Thompson, 709 F.2d at 382. Moreover, there is no evidence that Sergeant Arellano was aware that Patrick had been denied the medications and glasses and that his health and well being were threatened. Without evidence that Sergeant Arellano had knowledge of the alleged deprivation and was aware of the danger it posed, the court cannot find that she exhibited deliberate indifference to Patrick's safety. Brewer, 587 F.3d at 770; see also Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996) (the standard is whether the defendant had actual knowledge of the risk to the inmate and responded with deliberate indifference).

Apart from the defendants' lack of involvement or awareness of the alleged deprivation, this claim is subject to dismissal because

the evidence does not demonstrate that Patrick suffered any physical harm from the temporary denial of the medications or the glasses. Efforts were made to return the items to Patrick who thwarted them by throwing feces at the cell door. (Docket Entry No. 36-2, at 15)

Apart from the questions of whether and how long Patrick went without the items, the record demonstrates that he was seen and treated throughout his detention in PHD. This evidence undermines his claims of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); see also Mendoza v. Lynaugh, 989 F.2d 191, 193-95 (5th Cir. 1993).

The records also indicate that while Patrick is visually impaired, efforts were made to replace his glasses, and he did not suffer any injury as a result of the alleged deprivation, which was temporary. See Docket Entry No. 36-5, at 12 ("NO ACUTE DISTRESS."). With regard to the blood pressure medication tests showed that Patrick's blood pressure actually lowered after the alleged deprivation. See, e.g., Docket Entry No. 36-5, at 37 (Aug. 12, 2010: 182/93); Docket Entry No. 36-5, at 20 (Sept. 14, 2010: 110/63). The absence of any evidence of substantial harm defeats Patrick's claim of deliberate indifference. Mendoza, 989 F.2d at 195. Therefore, Patrick's claim of deliberate indifference will be dismissed.

**B.    Retaliation**

Patrick claims that Warden Johnson retaliated against him by taking his medications after he complained to her about a prior

alleged taking of his property. "To prevail on a claim of retaliation a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006), quoting MacDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." MacDonald, 132 F.3d at 231, quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Patrick must prove that he was engaged in a constitutionally protected activity and that Warden Johnson took action against him in order to discourage him from engaging in such activity or to punish him for doing so. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Patrick must do more than express his "personal belief that he is the victim of retaliation." Id., quoting Edwards, 51 F.3d at 580.

Patrick's claim is based in part on a meeting he had with Warden Johnson during which he complained about his lost property. Patrick alleges that Warden Johnson said during the interview that she could make things difficult for him. In her affidavit (Docket Entry No. 36-7, at 2) Warden Johnson acknowledges meeting with Patrick and discussing property that he had bought at the commissary but which was not given to him when he was transferred to PHD. However, she denies that Patrick ever mentioned anything about lost medication or glasses. Id. She also denies retaliating

against him for complaining about his lost property. The conflicting accounts such as those presented by Patrick and Warden Johnson are not subject to resolution in a summary judgment proceeding. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) ("summary judgment is not a procedure for resolving a swearing contest"). However, the court may nevertheless examine the substance of the claim to determine if there is any evidence to support it. See Tacon Mechanical Contractors, Inc. v. Aetna Cas. and Sur. Co., 65 F.3d 486, 488 (5th Cir. 1995).

Patrick claims that Warden Johnson retaliated against him for complaining about his lost property by taking more of it, but he does not point to any evidence showing that she actually took the property or authorized its seizure. He does allege in his response that an officer told him that Warden Johnson had instructed him to bring her Patrick's property. (Docket Entry No. 42, at 3) However, there is no documentation to support this statement, and the intent behind the alleged instruction is not apparent. Moreover, Patrick admits that Warden Johnson assured him that he would get his property back, and his KOP medications were returned that day. Id.

Prisoners' claims of retaliation are considered warily by the courts lest they become embroiled in the multitudes of administrative disputes, disciplinary actions, and grievances filed daily in the prisons. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The record shows that Patrick has been in an ongoing battle

with the staff at Ferguson Unit. His own proffered evidence shows that attempts have been made to issue and return his KOP medications to him. See Docket Entry No. 42, at 24. However, he admits that he cannot control his temper and that he is subject to outbursts that harm him and others. Patrick's claim that Warden Johnson retaliated against him is based on an unsatisfactory encounter with her followed by another loss of his property. Conclusory allegations are not enough to establish a retaliation claim. Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). The bare fact that Patrick's property was allegedly taken after the meeting with the Warden is not sufficient to support an actionable claim. Enlow v. Tishomingo County, Miss., 45 F.3d 885, 889 (5th Cir. 1995).

The record fails to show that Warden Johnson had any intent to retaliate against Patrick for complaining about his property, and it is also clear that she had no personal involvement in the alleged taking of the property. Her only connection is her position as supervisor over the officers who were working in the jail. This connection is insufficient to establish Warden Johnson's liability in her individual capacity. Rios, 444 F.3d at 425. Moreover, Warden Johnson and the other defendants cannot be held liable in their official capacities because there is no showing that Patrick was harmed due to a policy or custom of TDCJ. Leffall, 28 F.3d at 525.

Therefore, the defendants' Motion for Summary Judgment (Docket Entry No. 36) will be granted and this action will be dismissed under FED. R. CIV. P. 56.

### V. **Patrick's Motions**

Patrick has filed an "Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order" to prevent the defendants from retaliating against him. (Docket Entry No. 30) The court will deny the motion since Patrick's claim will be dismissed. See Planned Parenthood of Houston and Southeast Tex. v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).

Patrick has filed a Motion for Leave to File Amended Complaint. (Docket Entry No. 39) The motion was filed after the court ordered a More Definite Statement, the Spears Hearing, and the defendants' Motion for Summary Judgment. It was also filed ten months after the date the court received Patrick's original Complaint. Therefore, the court will deny the motion because allowing Patrick to amend his Complaint would unduly prejudice the defendants. Parish v. Frazier, 195 F.3d 761, 763-764 (5th Cir. 1999).

Patrick has filed a motion for leave to file an answer (Docket Entry No. 41), which the court will grant. However, Patrick's response (Docket Entry No. 42) is styled as a Motion for Summary Judgment. The court will deny the motion for the reasons stated in this Memorandum Opinion and Order.

Patrick has filed a Motion for Injunctive Relief (Docket Entry No. 49) alleging that he has been the victim of an extortion scheme

carried out by another prison inmate. Patrick complains that several TDCJ officials, who are not parties to this action, have neglected their responsibilities in fulfilling their duty to protect him from such activity. The defendants have filed a response opposing the motion and pointing out that the motion involves parties and issues not related to this proceeding. (Docket Entry No. 50) The court will deny the motion because it has no relevance to the current proceeding and because Patrick has failed to show that there is a substantial likelihood that he would succeed on the merits. Nichols v. Alcatel USA, Inc., 532 F.3d 364, 372 (5th Cir. 2008). Patrick's subsequent motion to amend the motion for injunctive relief (styled as "Affidavit of John T. Patrick") (Docket Entry No. 51) will also be denied.

## VI. Conclusion

The court **ORDERS** the following:

1. The plaintiff's motion for leave to file an answer (Docket Entry No. 41) is **GRANTED**.

2. Defendants Bickham, Johnson and Arellano's Motion for Summary Judgment (Docket Entry No. 36) is **GRANTED**.

3. The civil rights Complaint (Docket Entry No. 1) filed by a TDCJ-CID prisoner is **DISMISSED with prejudice**. FED. R. CIV. P. 56(c).

4. All other motions (Docket Entry Nos. 30, 39, 42, 49, and 51) are **DENIED**.

**SIGNED** at Houston, Texas, on this 28th day of January, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-20-